[Sac. No. 6183.   In Bank.   Feb. 10, 1953.]

LEDA MARY FLINT et al., Appellants, v. BERTEL H. RUTHERFORD et al., Respondents.

Taylor & Taylor, Mazzera, Snyder & DeMartini and Edward Taylor for Appellants.

Frank B. Collier and Vernon F. Gant for Respondents.

GIBSON, C. J.—Plaintiffs, Mr. and Mrs. Earl Flint, seek to enjoin the sale under a deed of trust of certain real property belonging to them, and they have appealed from a judgment entered in favor of defendants.

The Flints and Mr. and Mrs. John Frazier borrowed $40,000

from Mrs. Iris Kewin in order to finance the acquisition of a sawmill. The indebtedness was evidenced by a promissory note which was executed by the Flints and the Fraziers as comakers. The note was secured by a chattel mortgage on personal property in the sawmill and by a trust deed covering a tract of land owned by the Fraziers and a house and lot owned by the Flints. As a part of the transaction, Mrs. Kewin, as first party, and the Flints and Fraziers, as second parties, entered into a supplemental agreement which provided that all contracts with respect to the sale of any real property described in the trust deed should be deposited in escrow, and that all payments on account of the purchase price of any of the property should be credited on the note and deed of trust.

The land owned by the Fraziers was being subdivided, and the proceeds from the sales of lots were applied in payment and reduction of the note until the balance due on account of the principal was approximately $8,400. Thereafter the Fraziers and Mrs. Kewin, without the knowledge or consent of the Flints, instructed the escrow company to accumulate and hold the proceeds from the sales of subdivision property and not to credit the note with any further payments from such proceeds. These instructions were followed by the escrow holder, and the sum of $5,085.99 was accumulated. In the meantime, installments on the note became overdue and were not paid.

At about this time the Fraziers, Mrs. Kewin and a Mr. Rutherford executed certain agreements between themselves and opened another escrow without the consent of the Flints. In these transactions Mrs. Kewin assigned the Flint-Frazier note, together with the trust deed and chattel mortgage, to Rutherford who took with knowledge of the facts stated above. Rutherford released the subdivision property from the trust deed, and it was reconveyed to the Fraziers. He also released the chattel mortgage on the personal property in the sawmill. The Fraziers executed a new note to Mrs. Kewin for approximately $8,400, being the unpaid principal and interest due on the Flint-Frazier note, and as security therefor gave a new trust deed on the subdivision tract. The money which had accumulated in the first escrow was released by Rutherford and divided between Mrs. Kewin and the Fraziers. As a result of these transactions Rutherford held the Flint-Frazier note for $40,000, on which about $8,400 remained due, secured only by the lien of the trust deed on the Flint home.

The installments on the Flint-Frazier note being in default,

Rutherford instituted proceedings under the trust deed for the sale of the Flints' home. This action to enjoin the sale was then brought against the Fraziers, Mrs. Kewin, Rutherford, the trustee and the escrow holder on the theory that the failure to apply all the proceeds from sales of subdivision lots toward payment of the Flint-Frazier note constituted a breach of the supplemental agreement.

Evidence of the circumstances surrounding the transaction between the Flints, the Fraziers and Mrs. Kewin was received at the trial without objection. It appears that Flint introduced Frazier to Mrs. Kewin, with whom they discussed the possibility of a loan for the purpose of acquiring a lumber mill. Mrs. Kewin was unwilling to lend the money unless she was given a first lien upon the Frazier property which was being subdivided. There was then a lien of approximately $8,000 on this property, and in order to obtain enough money from Mrs. Kewin to free the property and purchase the sawmill, the Flints agreed to put up their home as additional security. As a part of the transaction Flint was to receive an interest in the sawmill, the extent of which is in dispute and the subject of other litigation. The bill of sale was made out in the names of Flint and Frazier, and Flint testified that he was to receive a half interest in the mill.

The trial court found and concluded that the supplemental agreement was for the benefit of Mrs. Kewin and her assigns and not for the benefit of the Flints or the Fraziers, that the proceeds from the sales of the subdivision lots were not the primary security for the loan, that the Flints were not damaged and that they were not entitled to enjoin the sale under the trust deed.

In our opinion, the judgment is supported by the evidence. The supplemental agreement was not, as claimed by the Flints, a tripartite contract; instead it was a bilateral agreement entered into by Mrs. Kewin as party of the first part, and by the Fraziers and Flints as parties of the second part. Mrs. Kewin demanded execution of the agreement as a condition to making the loan, and it was drawn by her attorney for the obvious purpose of protecting the security. It did not purport to make the proceeds from the Frazier tract the primary security or to provide for the order in which resort might be had to the different items of property. It applied to all contracts for the sale of any of the real property described in the deed of trust, and it specifically referred to both present and future contracts. While it provided that all agree-

ments for the sale of any property described in the trust deed, and "particularly" all agreements with respect to the sale of any part of the Frazier tract, should be deposited with the escrow holder, the promises with respect to the application of the proceeds of such sales were, of course, made by all the parties of the second part and were applicable to all the realty secured by the deed of trust. Hence, if the Flints had contracted to sell their home, it would have been their duty, under the agreement, to deposit that contract with the escrow holder and have all payments applied on the note.

It was, of course, to the advantage of the Flints to have all proceeds from the subdivision sales applied in reduction of the debt on which they were liable, since resort would not be had to their home so long as such proceeds were sufficient to meet the installments. On the other hand, it is clear that the Flints, who were comakers, were obligated to Mrs. Kewin to pay the entire amount of the note and that they were also obligated to reimburse the Fraziers for any payments which the Fraziers made covering the Flints' proportionate part of the indebtedness. It follows that if the Flints are· not required to bear more than their share of the debt, they are in no position to complain that they were injured by the failure to apply on the Flint-Frazier note the money which was accumulated in the escrow from the proceeds of sales of the Frazier tract.

There is no dispute that the Fraziers paid $33,600 on the note, while the Flints paid nothing, and that about $8,400 remained unpaid. As we have seen, the Flints and the Fraziers signed the note as comakers. The Flints claim that they have a half interest in the sawmill, and so far as the record shows they may be liable to the Fraziers for one-half of the amount of the debt. If the Flints were to be liable only for a lesser proportion of the indebtedness, the burden was on them to establish that fact as a predicate for any claim that the threatened sale of their home would cause them to bear more than their share of the debt. They did not sustain this burden and, therefore, are not entitled to enjoin the sale under the deed of trust.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied March 9, 1953.